**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 07-0078 (GK)** |
| **v.** | : | |
| | : | |
| **DENISE McLEOD,** | : | |
| | : | |
| **Defendant** | : | |
| | : | |
| _____ | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in its sentencing decision. Consistent with the Presentence Report ("PSR") and the guidelines range recommended by the United States Sentencing Guidelines ("U.S.S.G."), the Government requests that this Court sentence the defendant within the range of 21 to 27 months for the federal offenses of conviction, and within the range of one to 12 months for the D.C. Code offenses. The government does not oppose concurrent terms of incarceration.

As the Court is well-aware, this is a real estate fraud case. Defendant McLeod pleaded guilty to the indictment; co-defendant Nelson Brockenborrugh was convicted by a jury, following a trial in which defendant McLeod did not participate.

A.  Background

In the Spring of 2005, defendant McLeod was a real estate agent and co-defendant Brockenborrugh was a Court Security

-2-

Officer at the D.C. Superior Court.  They became interested in
acquiring a rooming house located at 1133 Sixth Street, N.W.,
when a nearby neighbor of the property advised Brockenborrugh
that the elderly owner of the property had died.  In April of
2005, defendants McLeod and Brockenborrugh went to the property
and met Katrena Robinson, the granddaughter of the deceased
owner, James Roy.  Ms. Robinson was in the process of having
herself formally named as the administrator of her grandfather's
estate, both in Maryland and D.C. and was not at that time in a
position to dispose of the property.  Defendant McLeod contacted
the attorney for the estate and was told to wait, but she instead
elected to draft a deed transferring the property for $10,000 on
which she forged Mr. Roy's signature.

Defendant McLeod solicited the assistance of two employees
of the Superior Court clerk's office to witness and notarize the
deed.  One clerk purported to witness Mr. Roy's "signature" and
another clerk added her notary seal.  Both of those individuals
have pleaded guilty to aiding and abetting the uttering of the
deed to the D.C. Recorder of Deeds, based on defendant McLeod's
act of filing of the deed in November 2005.  One week later, co-
defendant Brockenborrugh paid defendant McLeod one-half of the
filing fees and the purported amount of sale, on which he added
the notation "for my half of 1133 Sixth Street, N.W."

Defendant McLeod then arranged to sell the property to a

-3-

developer in Rockville, Maryland, for $300,000.  This caused the
developer to request a routine title search, which resulted in
the discovery of the forgery.  Thereafter, the developer advised
Ms. McLeod that he would not complete the purchase unless and
until she acquired the property properly.

     The defendants then initiated negotiations with the heirs,
unaware that Ms. Robinson and her attorney had independently
discovered the forged deed; that they had solicited the
assistance of the FBI; and that the negotiations thereafter were
tape-recorded.  As defendant McLeod has admitted (consistent with
testimony that the Court and jury heard at the trial of co-
defendant Brockenborrugh), the defendants made several
misrepresentations during these negotiations, in an effort to
induce Ms. Robinson and the other heirs of Mr. Roy's estate to
accept a fraudulently-depressed price.  These misrepresentations
included:  1) that the building on the property was not habitable
and was worthless; 2) that the property would require costly
decontamination processes; 3) that the assessed valuation of the
property was $114,000 (a fact that the defendants supported with
an altered "official" tax assessment document that they faxed to
Ms. Robinson, knowing that it had been altered); and 4) that
there were no problems discovered in the title search (a fact
that the defendants supported with a letter from the settlement
attorney that they faxed to the heirs to the property, knowing

-4-

that the content of the letter was untrue, since the title search
had revealed the fraudulent transfer from "James Roy" to
defendant McLeod by the forged deed).

In furtherance of the fraud, many wire communications were
sent to Ms. Robinson and others purporting to be heirs in the
undercover operation.  Defendants McLeod and Brockenborrugh faxed
(or caused to be faxed) a contract for sale, a revised contract,
the lawyer's letter falsely representing the results of a title
search of the property, a letter regarding deposit money placed
in escrow, and a memorandum requesting confirmation of receipt of
an earlier communication.

Ultimately, the sale was never completed, of course, and the
existence of the FBI investigation was made known to the
defendants.  Defendant McLeod initially tried to give an innocent
explanation for her conduct (claiming that someone posing as
James Roy *had defrauded her*), but she quickly recanted that story
and admitted her culpability.  Also, defendant McLeod initially
tried to shield co-defendant Brockenborrugh from blame, but later
admitted that he was complicit in the fraud upon Ms. Robinson and
her family.  During the allocution of her guilty plea, defendant
McLeod made one final effort to protect defendant Brockenborrugh,
by volunteering that he was not present when the fax
communications were made.  She admitted upon further questioning,
however, that defendant Brockenborrugh was aware that the faxes

-5-

were to be sent, a fact that was corroborated during the trial,

when the jury heard tape-recordings of defendant McLeod's

promises to fax materials to Ms. Robinson, made while defendant

Brockenborrugh was present and participating in the negotiation.

B.  <u>Sentencing Guidelines</u>

The Government agrees with the conclusion set forth in the

Presentence Report that the reasonable and appropriate guideline

range is **21 to 27 months**.  The United States Sentencing

Guidelines ("U.S.S.G.") recommends a sentence as follows:

- The base level offense for violation of a 20-year
  maximum fraud statute is 7 (§2B1.1(a)(1));

- 12 levels are added for loss greater than $200,000 but
  less than $400,000 (§2B1.1(b)(1)(G));

- 3 levels subtracted for acceptance of responsibility
  (§3E1.1(b));[1]

- **Total adjusted offense level:  16**.

The only disputed factor appears to be the amount of

intended gain or loss, and the government concedes that there are

many methods of calculation that the Court might apply.  In this

case, the government agrees with the PSR that defendant McLeod

intended to gain the full $300,000 she was to receive from the

---

[1]  It is possible that the defendant may request some kind
of consideration from the Court for what she will claim was a
willingness to cooperate against defendant Brockenborrugh.  The
government opposes any such consideration, because defendant
McLeod squandered what little credibility she might have had (and
it was minimal from the start) by variously attempting to protect
defendant Brockenborrugh.

-6-

developer, had the forged deed remained undiscovered.  We
anticipate that the defendant, on the other hand, may argue that
much later, she was resigned to a profit of only $135,000, based
on the reduction of the negotiated price of $165,000 with
Ms. Robinson and the other "heirs."  Of course, there are
additional methods of calculating the intended loss or gain, some
of which require an assessment of the market value of the
property, given the fact that the defendants intended to deprive
Ms. Robinson of her property altogether, at a time when she could
have sold it for a great deal of money.  But the government
agrees that any calculation based on market value is more
speculative and we prefer the calculation applied by the
Probation Officer, as it is based on facts in the record and
gives the defendant the more generous view.

     The government also notes that the defendant's suggested
calculation (if indeed she takes the position that the intended
loss/gain is in the "more than $120,000" category set forth in
§2B1.1(b)(1)(F)), overlaps with the range recommended in the PSR.
The Court could decide, therefore, that a sentence of 21 months
is consistent with the positions of both parties, because with a
criminal history of Category I, the range of punishment using the
lower calculation is **15 to 21 months**, and the range of punishment
using the higher calculation is **21 to 27 months**.

     It is the government's position that the higher range is

-7-

reasonable and appropriate, particularly given our recommendation
(set forth below) that the sentence for the D.C. Code offenses
can be concurrent.  That is to say, the defendant's admission
that she forged and uttered the deed sets the timeline for
measuring her intended gain back at the time she first planned to
steal the property outright, with no funds transferring to the
victim.  The fact that this plan was thwarted by others should
not inure to the defendant's benefit.

The D.C. Superior Court voluntary guidelines recommends a
sentencing range for forgery and uttering (both "Group 9"
offenses), of one to 12 months incarceration for defendants with
little or no criminal history.  The conduct involved in the D.C.
Code offenses is a significant part of the federal offense
conduct.  And if the Court agrees that the defendant's intended
loss/gain is set at the time of the commission of the forgery and
uttering, the the government does not oppose the imposition of a
concurrent sentence.

Finally, for the reasons set forth in the next section of
this memorandum, it is the government's view that the defendant
cannot demonstrate that her conduct or personal history suggest
any appropriate reason or extraordinary circumstance that might
justify a non-guidelines sentence.

-8-

C.  <u>Sentencing Factors under 18 U.S.C. §3553</u>

As the Court is well-aware, the recommended sentence set forth in the U.S.S.G. is but one factor to consider in determining an appropriate sentence.  *See* 18 U.S.C. §3553(a). But as set forth below, the §3553 considerations the Court should consider do not provide a basis in this case, for a sentence other than that recommended by the Sentencing Commission.

First, it is clear from the explicit language of §3553 that the Guidelines are important.  The framers of §3553 both endorsed and respected the ranges set by and the policy statements made by the United States Sentencing Commission, which in these circumstances recommends imprisonment.  Second, we note that the converse is also true, that is, that the U.S.S.G. explicitly recognizes §3553 as its lynchpin, setting forth in its preamble its reliance on the statute and calling out each and every factor set forth therein.  We note most particularly the factor set forth in §3553(a)(6), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," which is the heart and spirit of the Guidelines.  *See* 18 U.S.C. §3553(a)(6).  It is with this commitment that the government presses the Court for a sentence consistent with the Guidelines.

Looking to the factors of §3553, we first contend that a sentence within the range of 21 to 27 months is appropriate to

-9-

the "nature and circumstances of the offense and the history and characteristics of the defendant" (*see* §3553(a)(1)).  The many chapters of the fraud committed by the defendant, here, were carefully planned, diversified, and carried out over a sustained period of time.  The defendant used public agencies and employees, both creating and recording documents (the deed) and altering existing official documents (the assessment) for profit. The two D.C. Superior Court employees that were recruited in this criminal endeavor each lost a good job and had to plead guilty to a significant felony offense.

The defendant's history and characteristics reflect an individual with employable skills and a salary more than sufficient to support herself and her family, without resorting to crime.  In contrast, her victims were individuals much less fortunate.  For that reasons, the government believes that only a sentence of imprisonment is sufficient to "reflect the seriousness of the offense ... promote respect for the law, and ... provide just punishment" (*see* §3553(a)(2)(A)), and at the same time "afford adequate deterrence to [future] criminal conduct" (*see* §3553(a)(2)(B)).

Significantly, §3553 places fundamental emphasis on uniformity of sentencing.  A "Zone C" sentence in the range of 21 to 27 months is uniform and appropriate, because it is consistent with similar crimes and the defendants committing them.  The

-10-

defendant can articulate no compelling fact or circumstance that justifies a sentence lower than similarly situated offenders.

The defendant's conduct was outrageous. But for her early acceptance of responsibility, the government would be seeking a much longer term of incarceration. It is unspeakable that public records affecting the ownership of land -- and the public employees who are charged with ensuring their integrity -- can be corrupted as easily as the defendant did here. The ownership of real property is the American dream. So, too, is one's ability to provide for his heirs through the succession of ownership in real property. In this case, James Roy's sister proudly left to him her house when she died; Mr. Roy in turn proudly left it to his children and grandchildren, hoping that the rental or sale proceeds would finance their educations. These were not and are not wealthy people; indeed, all of the defendants in this case were clearly more fortunate than these victims. Yet, the defendants believed they were more entitled to profit from 1133 Sixth Street than was the family that had owned it for 50 years. It is disgraceful that they would assert that forgery and misrepresentation are the tools of proper and clever business dealings. They are wrong. For corrupting public records and employees, and for cheating people less fortunate, defendant McLeod deserves significant punishment.

-11-

<u>Conclusion</u>

For the reasons set forth herein, the government believes that a sentence in the range of 21 to 27 months (including a concurrent sentence of one to 12 months for the D.C. Code offenses) is reasonable and appropriate.

Respectfully Submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar Number 498610

By:      /s/
_____
BARBARA E. KITTAY
D.C. Bar Number 414216
AARON MENDELSON
Assistant U.S. Attorneys
555 Fourth Street, N.W., Rm. 4846
Washington, D.C.  20530
Tel. (202) 514-6940
Barbara.Kittay@usdoj.gov
Aaron.Mendelson@usdoj.gov